UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL, INC., <br><br> Plaintiff, <br><br> v. <br><br> KAREN K. GUPTON, <br><br> Defendant. | Case No. 14-cv-03105-JSW (KAW) <br><br> REPORT AND RECOMMENDATION TO GRANT IN PART AN DENY IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT KAREN K. GUPTON <br><br> Dkt. No. 57 |

Plaintiff Chanel, Inc. moves for default judgment against Defendant Karen K. Gupton (a/k/a Karen Kearney Gupton, d/b/a The Trendy Baby a/k/a thetrendybaby.com) ("Defendant") for trademark infringement. Plaintiff's motion follows an entry of default by the clerk on September 18, 2014. Defendant has not appeared in this action, nor has she responded to Plaintiff's first amended complaint or motion for default judgment.

On January 15, 2015, the Court held a hearing on Plaintiff's motion for default judgment, at which Defendant did not appear. After a review of Plaintiff's pleadings and moving papers, and for the reasons set forth below, the Court recommends that Plaintiff's motion be GRANTED IN PART AND DENIED IN PART.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Chanel, Inc. ("Chanel") is a New York corporation with its principal place of business located at Nine West 57th Street, New York, New York 10019. (First Am. Compl., "FAC," ¶ 6.) Chanel is engaged in manufacturing and distributing a variety of high quality goods throughout the world, including within the Northern District of California, under multiple world famous common law and federally registered trademarks (collectively the "Chanel Marks"). *Id.*

Defendants Jessica Gaul, Gaul Innovations, LLC (d/b/a Kayden Grace Designs a/k/a kaydengracedesigns.com), Karen K. Gupton (a/k/a Karen Kearney Gupton, d/b/a The Trendy Baby a/k/a thetrendybaby.com), and Margaret Malto (d/b/a Lunabelle Boutique a/k/a lunabelleboutique.com) allegedly advertised, distributed, sold and/or offered for sale products in interstate commerce being counterfeit and infringing trademarks, which are exact copies of the Chanel Marks, and did so without authorization. (FAC ¶¶ 21-25.) These counterfeit products, including shoes, are of a quality substantially different from Chanel's genuine goods. (FAC ¶¶ 21-22.) Plaintiff alleges that Defendants' knowingly and intentional use of the Chanel marks without Chanel's consent or authorization results in consumer confusion. (FAC ¶ 21.)

On July 9, 2014, Chanel filed a complaint for trademark counterfeiting and infringement and false designation of origin. *See* 15 U.S.C. §§ 1114, 1125(a). On July 16, 2014, Plaintiff filed a first amended complaint. (FAC, Dkt. No. 16.) Specifically, Chanel alleges the regarding of three of its Marks.[1] The summons and first amended complaint were personally served on Defendant Karen Gupton on July 27, 2014, at 2425 Stately Oaks Drive, Raleigh, North Carolina, by serving Defendant's son, Elliot Gupton, who is 18 years of age or older and resides at the same address as his mother. (Dkt. No. 35.) Defendant Gupton never served a responsive pleading. Co-defendants Jessica Gaul, Gaul Innovations, LLC (d/b/a Kayden Grace Designs a/k/a kaydengracedesigns.com), and Margaret Malto (d/b/a Lunabelle Boutique a/k/a lunabelleboutique.com), however, participated in this litigation and entered into stipulated consent judgments with Chanel, which included permanent injunctions. (Dkt. Nos. 56 & 64.) Thus, Defendant Gupton is the only remaining defendant.

On September 16, 2014, Chanel filed an amended motion for entry of default against Defendant Gupton, who was served by U.S. Mail. (Dkt. Nos. 37 & 38.) The Clerk entered the amended default on September 18, 2014. (Dkt. No. 40.)

---

[1] The Marks Chanel claims that it owns, and contends are being violated, are Reg. No. 1,501,898 (Chanel Mark and Design, used in connection with key chains, costume jewelry, gift wrapping paper, blouses, shoes, belts, scarves jackets, men's ties, and brooches and clothing buttons ), Reg. No. 1,241,264 (a Chanel Mark and Design, used in connection with clothing, accessories, and footwear), and Reg. No. 1,241,265 (for the "CHANEL" Mark, used in connection with clothing, accessories, and footwear). (FAC ¶ 12.)

2

On October 29, 2014, Plaintiff filed a motion for default judgment seeking a permanent injunction against Defendant's use of the Chanel Marks, statutory damages, an award of reasonable costs, and prejudgment interest.  (Dkt. No. 21.)  On October 30, 2014, the motion was referred to the undersigned for report and recommendation. (Dkt. No. 60.)

On January 15, 2015, the Court held a hearing, at which Defendant did not appear.

## II.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).  In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

///

///

**B. Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this matter because Chanel raises claims under federal law, specifically trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), and dilution of a famous mark under 15 U.S.C. § 1125(c). 29 U.S.C. §§ 1331, 1338.

**C. Personal Jurisdiction**

Plaintiff served Defendant with a copy of the summons and first amended complaint in compliance with California state law. *See* Fed. R. Civ. P. 4(e)(1).

California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Thus, this Court may assert specific personal jurisdiction over nonresident defendants if three requirements are met:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Id.* (quotation marks and citation omitted). Plaintiff bears the burden of satisfying the first two requirements; the burden then shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citations omitted).

1. Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

4

protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "In return for these 'benefits and protections,' a defendant must—as a quid pro quo—'submit to the burdens of litigation in that forum.'" *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Here, Gupton sold counterfeit goods through her website, which were shipped to consumers by Gaul Innovations, located in the Northern District of California, under a drop ship agreement. (*See* FAC ¶ 4.) Thus, Gupton purposefully availed herself of the benefits and protections of California law.

      2. <u>Arising from forum-related activities</u>

This element is established if Chanel would not have been injured "but for" the nonresident defendant's forum-related activities. *See Ballard v. Savage*, 65 F. 3d 1495, 1500 (9th Cir. 1995). Chanel expends a significant amount of time, money, and other resources developing, advertising, and otherwise promoting its goods and associated trademarks, and has carefully monitored and policed the use of the Chanel Marks. (Pl.'s Mot. at 2.) Counterfeit goods, and the advertisement of those goods, misappropriate Chanel's advertising ideas and style. (FAC ¶ 23.) As explained above, Defendant entered into a drop ship agreement with a California company to ship counterfeit goods sold on her website. Thus, Chanel's injuries arise from Defendant's forum-related activities.

      3. <u>Reasonableness</u>

Because the first two requirements for exercising specific personal jurisdiction has been established, the nonresident defendant must present a "compelling case" that asserting jurisdiction would be unreasonable. *Mavrix*, 647 F. 3d at 1228 (citations omitted). Defendant has essentially waived her opportunity to make this showing by failing to participate in this litigation. Nonetheless, the assertion of personal jurisdiction in this instance is not unreasonable given that Defendant used a California company to ship counterfeit goods that she sold through thetrendybaby.com website. Thus, Defendant had "fair warning" that she might be sued in California. *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks and citation omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (personal jurisdiction in a remote forum is reasonable if the defendant "should reasonably anticipate being

5

haled into court there").

In light of the foregoing, the Court has personal jurisdiction over Defendant Karen Gupton.

### D. Venue

Venue is proper in the Northern District of California under 28 U.S.C. § 1391, as Defendant contracted with Co-defendants Gaul and Gaul Innovations, located in the district, to ship the infringing goods sold on her website to consumers around the country. (FAC ¶ 4.)

### E. Analysis of the Eitel Factors

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

#### 1. Prejudice

Plaintiff will suffer prejudice if the court does not enter default judgment because it would be left without recourse to recover for the harm already inflicted by Defendant and to prevent future infringement. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiff would, therefore, be gravely prejudiced if the Court did not enter default judgment.

#### 2. Merits of Plaintiff's Claims & Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471–72. For ease of analysis, these factors are considered together.

##### a. Trademark Infringement (15 U.S.C. § 1114)

Chanel's first cause of action alleges that Defendant committed trademark infringement under 15 U.S.C. § 1114. (FAC ¶¶ 31-37.) To prove trademark infringement, Plaintiff must show (1) that its marks are valid and protectable trademarks; (2) that plaintiff owns the trademarks; (3) that plaintiff used its marks in interstate commerce; (4) that defendant used in commerce a reproduction or copy of a registered trademark in connection with the advertising or sale of goods or services; and (5) that such use is likely to cause confusion, mistake, or deceive consumers.

First, Chanel has alleged that its marks are valid and protectable trademarks that were registered with the United States Patent and Trademark Office. (FAC ¶ 12.) Second, Chanel has alleged that it owns the trademarks. *Id.* Third, the complaint alleges that AAA has used its marks

1  in interstate commerce. (FAC ¶ 13.)  Fourth, Chanel has alleged that Defendant has used Chanel's
2  Marks in connection with promoting and otherwise advertising, distributing, selling and/or
3  offering for sale products, specifically shoes, in interstate commerce bearing counterfeit and
4  infringing trademarks. (FAC ¶¶ 21, 33.)  Finally, Chanel has alleged that Defendant's use of the
5  Chanel Marks is likely to cause confusion. (FAC ¶ 34.)  Thus, Chanel has adequately pleaded a
6  claim for trademark infringement.

Accordingly, Chanel has sufficiently stated a claim for trademark infringement.

### b. False Designation of Origin (15 U.S.C. § 1125(a))

In its second cause of action, Chanel alleges unfair competition by false designation of origin under 15 U.S.C. § 1125(a), which requires Plaintiff to show that Defendants used in commerce

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his goods by such person.

15 U.S.C. § 1125(a)(1); FAC ¶¶ 38-44.  The analysis for unfair competition under Section 1125(a) is similar to the analysis for a claim for trademark infringement under 15 U.S.C. § 1114. *Brookfield Commc'ns., Inc., v. West Coast Entm't Corp.*, 174 F.3d 1046–47 (9th Cir. 1999).  Here, Chanel alleges that Defendant used the Chanel Marks in such a way that consumers would wrongly believe that the counterfeit goods were genuine. (FAC ¶ 34.) Indeed, in addition to affixing the Chanel Marks to shoes, Defendant displayed these marks prominently in advertisements and promotion of the counterfeit goods in such a manner that the consuming public would believe that the counterfeit goods were genuine, non-infringing products. (FAC ¶ 42.) For example, the website refers to the shoes bearing the Chanel Mark (interlocked logo) as "chanel crystallized tennis shoes." (Decl. of Eric Cisneros, "Cisneros Decl.," Dkt. No. 57-9 ¶ 4, Ex. A at 1.)  Thus, Chanel has sufficiently pleaded a cause of action for false designation of origin.

### 3. Sum of Money at Stake

The fourth *Eitel* factor focuses on the amount at issue in the action, as courts should be

7

hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

Chanel seeks statutory damages in the amount of $40,000.00 pursuant to 15 U.S.C. § 1117(c)(2). Although the Court finds this amount excessive and recommends a lesser amount below, $40,000.00 is reasonable under *Eitel*, as the statute provides for a maximum of $2,000,000.00 per counterfeit mark per type of goods or services sold when the use of the counterfeit mark was willful. 15 U.S.C. § 1117(c)(2); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (holding that this factor weighed in favor of default judgment where plaintiff asserted copyright, trademark, breach of contract, and fraud claims seeking damages up to $4,900,327.07).

### 4. The Possibility of a Dispute Concerning Material Facts

With respect to the fifth prong, Defendant has not participated in this action and has not made any attempt to contest any of Plaintiff's material facts or legal assertions or moved to set aside the entry of default despite being served with all papers. Even if the material facts were found to be untrue, the effect of a permanent injunction on any non-use of the Chanel Marks would be negligible, because there would be no conduct to be enjoined, and Defendants could move to set aside the default judgment awarding statutory damages and reasonable costs.

### 5. Whether Default was a Result of Excusable Neglect

Plaintiff properly served Defendant with the summons and first amended complaint. Defendant made no appearance in this matter and has not responded to Plaintiff's motion. Consequently, there is nothing suggesting that Defendant's failure to appear and litigate this matter is based on excusable neglect. *Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

///

### 6. Federal Rules Preference for a Decision on the Merits

After an examination of these facts in the aggregate, the Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. Thus, the undersigned recommends an entry of a default judgment.

### III. DAMAGES & INJUNCTIVE RELIEF

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

In its motion for default judgment, Chanel seeks a permanent injunction forbidding Defendant from using the Chanel Marks, statutory damages in the amount of $40,000 pursuant to 15 U.S.C. § 1117(c), and reasonable costs. (Pl.'s Mot. at 12-13.)

Chanel alleges that Defendant's actions constituted willful, deliberate, and intentional infringement of Chanel's federally registered trademarks in violation of sections 15 U.S.C. §§ 1114 and 1125(a) of the Lanham Act. (Pl.'s Mot. at 6-7; FAC ¶¶ 36, 43.) An allegation of willful trademark infringement is deemed true on default. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). Furthermore, "[w]illfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights . . . ." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007).

### A. Injunctive Relief

Chanel seeks to permanently enjoin Defendant from infringing on the three, identified Chanel Marks (Reg. No. 1,501,898, Reg. No. 1,241,264, and Reg. No. 1,241,265) in the future. Injunctive relief is authorized under 15 U.S.C. § 1116(a) to prevent violations under § 1125. Generally, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). In

light of Defendant's potentially ongoing violations of 15 U.S.C. § 1125, the Court believes that permanent injunctive relief is appropriate with respect to the Chanel Marks. *See Verizon California Inc. v. Online NIC*, C 08-2832 JF (RS), 2008 WL 5352022 (N.D. Cal. Dec. 19, 2008)(citation omitted). Accordingly, the Court recommends that Defendant be enjoined from infringing on the Chanel Marks.

### B. Statutory Damages Pursuant to 15 U.S.C. § 1117(c)

Chanel may recover statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Pursuant to § 1117(c)(2), however, if the court determines that the infringement was willful, a defendant may recover a maximum of $2,000,000 per mark infringed.

Chanel seeks $40,000 in statutory damages based on its claim that shoes Defendant advertised and sold infringed on two Chanel Marks. District courts have discretion in determining the amount of statutory damages, subject only to the statutory minimum and maximum. *Coach Services, Inc. v. YNM, Inc.*, 2011 WL 1752091, *5 (C.D. Cal. May 6, 2011); *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (interpreting 17 U.S.C. § 504(c), a similarly-worded copyright infringement provision, and concluding that district courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."). In determining the appropriate amount of statutory damages to award on default judgment, courts in this district consider whether the amount of damages requested bears a "plausible relationship to Plaintiff's actual damages" and whether the amount is sufficient to deter future infringement *Adobe Sys., Inc. v. Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) (citations omitted); *see Playboy Enters., Inc., v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274-75 (9th Cir. 1982). While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall. *Tilley,* 2010 WL 309249, at *5-6 (rejecting request for $250,000 in statutory damages for the willful infringement of five trademarks and awarding $50,000 in total statutory damages.)

Here, Chanel primarily relies on *Philip Morris USA Inc. v. Liu* in support of its request for

a statutory damages award. (*See* Pl.'s Mot. at 12.) In *Philip Morris*, the district court in the Central District of California awarded the statutory maximum under 15 U.S.C. § 1117(c)[2] for willful trademark infringement in the amount of $1,000,000 for each of two trademarks infringed by the defendant's transportation and unloading of counterfeit cigarettes bearing the Phillip Morris Marks. 489 F. Supp. 2d 1119, 1122, 1124 (C.D. Cal. 2007). The statutory damages award in *Philip Morris*, however, bore a plausible relationship to the corporation's actual damages, because 52,150 cartons of counterfeit cigarettes were imported, and an accomplice was indicted by a federal grand jury for the importation and distribution of an additional 106,450 cartons of counterfeit cigarettes. Default Judgment at 2, *Philip Morris USA, Inc. v. Liu*, No. 05-CV-9015 (C.D. Cal. August 7, 2006), ECF No. 29. Thus, the awarding of the statutory maximum was necessary to deter the defendant and other counterfeiters, compensate the plaintiff for the damage caused by the defendant's actions, and to punish the defendant for his willful violation of plaintiff's protected marks. *Philip Morris,* 489 F. Supp. 2d at 1124.

While Defendant's conduct was willful, it does not warrant the maximum statutory penalty or the $40,000 penalty proposed by Chanel. Chanel seeks $20,000.00 for each of the two registered mark infringed. (Pl.'s Mot. at 11; Decl. of Adrienne Hahn Sisbarro, Dkt. No. 57-2, Ex. B; FAC ¶ 12.) Courts in this district have awarded significantly less in statutory damages per Mark on default judgment in similar cases involving Chanel. *See* Judgment and Permanent Injunction, *Chanel, Inc. v. Zhang San*, No. 10-CV-02180 RS (N.D. Cal. Jan. 10, 2011), ECF 28 (awarding $3,000.00 per twenty-one counterfeited marks per eight types of goods for a total of $504,000.00 in statutory damages); Report and Recommendation, *Chanel, Inc. v. US880*, Case No. C 10-2601 PJH (JCS) (N.D. Cal. July 5, 2011), ECF 52, Judgment (N.D. Cal. July 28, 2011), ECF 54 (awarding $3,000.00 each for fifteen demonstrated infringements for a total of $45,000.00 in statutory damages). At the hearing, Chanel stated that this was a "low scale" case, and that usually Chanel sought damages in the hundreds of thousands of dollars. As provided above, those cases involved larger scale counterfeiting operations, which included a larger number of Marks

---

[2] The court considered this case under an older version of this statute in which maximum statutory damages for willful infringement was $1,000,000 per counterfeit mark.

11

infringed and several types of counterfeit goods. *See Chanel, Inc. v. Zhang San*, No. 10-CV-02180 RS (N.D. Cal. Jan. 10, 2011), ECF 28.

Other counterfeiting cases awarded higher amounts of statutory damages for the trademarks infringed. *Adobe Systems, Inc. v. Tilley* involved the sale of pirated copies of Adobe software through *Amazon.com*, which resulted in duping consumers into believing they had purchased authentic Adobe software. 2010 WL 309249, at *4. The plaintiff only provided evidence of one purchase of the pirated software, which was conducted by one of its employees for $178.99, and the Amazon.com website showed that the defendants' account received 3 lifetime ratings. *Id.* at *4. While, the district court found the evidence sufficient to establish willfulness, the court concluded that an award of $50,000 per infringement would be a windfall. *Id.* Instead the court awarded Adobe $10,000 per trademark infringement for a total of $50,000. *Id.* Other cases involved pirated Adobe software have seen similar results on default judgment. *See, e.g., Adobe Sys. Inc. v. Brooks,* 2009 WL 593343 at *5 (N.D. Cal. March 5, 2009) (awarded $10,000 per willful infringement of five trademarks totaling $50,000 because the conduct was "likely more than just an occasional recurrence"); *see also Adobe Sys., Inc. v. Taveira*, 2009 WL 506861, at *6 (N.D. Cal. Feb. 27, 2009) (awarded $50,000 per trademark infringed for a total of $250,000 for the alleged sale of more than one thousand unauthorized copies of Adobe software).

This case bears some similarity to the counterfeit software cases in that the shoes at issue have a crystal pendant in the shape of the Chanel Mark, and are described as "chanel crystallized tennis shoes." (Cisneros Decl., Ex. A at 1.) This indicates that the shoes are a genuine Chanel product, or are otherwise endorsed by Chanel, which they are not. Chanel has only provided evidence of one pair of shoes sold, with a total purchase price of $94.85. (Pl.'s Mot. at 11; Cisneros Decl. ¶ 4, Ex. A.)[3] In addition, the Court must consider what deterrent effect the award of statutory damages will have, and the $3,000 award per Mark awarded in the other Chanel cases

---

[3] Chanel did not provide any information regarding the number of counterfeit shoes sold through Defendant Gupton's website in support of the motion. Assuming that Chanel does not know how many pairs of shoes were sold, it entered into a settlement agreement with Jessica Gaul and Gaul Innovations, LLC, which, as the supplier, should have been able to provide the number of units sold.

12

seems inadequate in this instance. This is especially true given that, as of the filing of the motion for default judgment, Defendant continued to have an image of the counterfeit shoes on her website, although they are no longer offered for sale.[4] (Decl. of Stephen M. Gaffigan, Dkt. No. 57-5, Ex. C.) Therefore, the Court recommends awarding Chanel $10,000 (ten times the minimum) for each of the two trademarks infringed, for a total award of $20,000. This award will adequately compensate Chanel for the damages alleged and, coupled with an injunction, should deter Defendant and others from engaging in similar behavior.

### C. Costs

Plaintiff seeks an award of reasonable costs in the amount of $485.00, which includes the $400.00 filing fee, and $85.00 for service of process. (Decl. of Anne E. Kearns, Dkt. No. 57-1 ¶¶ 11-13.) These costs are reasonable, and the undersigned recommends that the district court award costs in the amount of $485.00.

### D. Prejudgment Interest

Plaintiff has also sought an award of prejudgment interest. (Pl.'s Not. of Mot. for Default J., Dkt. No. 57 at 1.) Under 15 U.S.C. § 1117(b), where the court finds intentional use of a mark or designation as defined in section 1116(d) of the same title, "the court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(a) of title 26, beginning on the date of service of the claimant's pleading setting forth the claim for such entry of judgment and ending on the date such entry is made, or for shorter time as the court considers appropriate." 15 U.S.C. § 1117(b). Given the Court's finding that Defendant intentionally used Plaintiff's trademarks, the Court finds that an award of prejudgment interest at the legal rate is proper.

## IV. CONCLUSION

For the reasons set forth above, and for good cause shown, this Court recommends that Plaintiff's motion for default judgment against Defendant Karen K. Gupton be GRANTED IN

---

[4] The shoes were supplied by Jessica Gaul and Gaul Innovations, LLC, who agreed to be permanently enjoined from selling counterfeit merchandise bearing Chanel Marks, so the shoes are presumably no longer available.

1  PART AND DENIED IN PART, and that the district court award Plaintiff statutory damages in

2  the amount of $20,000.00, reasonable costs in the amount of $485.00, plus prejudgment interest at

3  the legal rate.

4        This Court further recommends that a permanent injunction be entered against Defendant

5  Karen Gupton, as follows:

6        Defendant and its respective officers, agents, servants, employees and attorneys, and all

7  persons in active concert and participation with it are hereby restrained and enjoined from:

    (a) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing Chanel's Registered Trademarks Reg. No. 1,501,898, Reg. No. 1,241,264, and Reg. No. 1,241,265 (collectively the "Chanel Marks");

    (b) using the Chanel Marks in connection with the sale of any unauthorized goods;

    (c) using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendant Gupton offered for sale or sold via the website operating under the domain name thetrendybaby.com and/or any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

    (d) falsely representing herself as being connected with Plaintiff, through sponsorship or association;

    (e) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services Defendant Gupton offered for sale or sold via the website operating under the domain name thetrendybaby.com, and/or any other website, e-store, or business are in any way endorsed by, approved by, and/or associated with Plaintiff;

    (f) using any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant Gupton via the website operating under the domain name thetrendybaby.com, and/or any other website, e-store, or business, including, without limitation, shoes, bearing the Chanel Marks;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant Gupton via the website operating under the domain name thetrendybaby.com, and/or any other website, e-store, or business, as being those of Plaintiff or in any way endorsed by Plaintiff;

(h) otherwise unfairly competing with Plaintiff;

(i) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

(j) using of the Chanel Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites and e-stores registered by, owned, or operated by Defendant Gupton, including the commercial Internet website operating under the domain name thetrendybaby.com.

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. See 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: January 15, 2015

KANDIS A. WESTMORE
United States Magistrate Judge